Chicago Title and Trust Company, Appellee, v. Philip Hoffberg et al., Defendants.
Appeal of J. Weinstein and Israel A. Abrams, Appellants.

Gen. No. 39,766.

Opinion filed January 10, 1938.

Shulman, Shulman & Abrams, of Chicago, for appellants; Meyer Abrams, of counsel.

Concannon, Dillon, Bostelman & Snook, of Chicago, for appellee Lawrence A. Barrett.

Mr. Justice McSurely delivered the opinion of the court.

This is a foreclosure proceeding which went to a decree finding, among other things, that there was due on all bonds and coupons the sum of $191,170.26, and directing a sale. This appeal questions that part of the decree which places certain bonds and coupons, aggregating approximately $33,700, held by the liquidating trustee, assignee of the Madison & Kedzie State Bank, on a parity with those held by other holders.

J. Weinstein and Israel A. Abrams are the appealing defendants and their claim is that the bank paid out of its funds these bonds and coupons after they were in default and holds them uncanceled, and therefore such bonds and coupons should be subordinated to the remaining bonds and coupons.

The record does not support the claim that these bonds and coupons were paid by the bank after de-

fault. The trust deed, dated June 27, 1927, ran from Philip Hoffberg to the Madison & Kedzie State Bank as trustee; the bond issue was in the amount of $130,000 payable at the bank; the first default occurred June 27, 1929; September 19, 1930, the mortgagor, Hoffberg, was served with notice of the acceleration of the entire debt, and January 13, 1931, the bill of foreclosure was filed. There was no evidence that the questioned bonds and coupons were acquired by the bank after maturity. The bonds of $500 each — Nos. 11, 12 and 13—which matured June 27, 1929, were acquired by the bank on July 26, 1928. Bonds numbered 18 and 19, matured December 27, 1929, were acquired June 27, 1929. There is no evidence as to when the bank acquired the other bonds in question. The witnesses testifying before the master all referred to these bonds as purchased by the bank. A witness called on behalf of defendant Etta Weinstein testified that the bonds were acquired by the bank ''by purchase, those bonds were bought by the bank.''

Defendants rest their case largely on the opinion in *Lake View Tr. & Sav. Bank v. Rice,* 279 Ill. App. 538. The facts in that case are substantially different from those before us. There it clearly appeared that the bonds were presented for payment to the Lake View bank at maturity, in the regular course of business, and they were paid without any knowledge on the part of the party presenting them that they were not marked paid and canceled. But the most decisive difference is the absence from the trust deed involved in the *Lake View* case of any permission permitting the bank to purchase bonds, paying for them out of its own funds and holding them on a parity basis. The trust deed in the instant case contains such a provision, which we shall later set out in full.

The question whether the Madison & Kedzie Bank, when it acquired the bonds and coupons in question,

paid them as a mere volunteer or acquired them as a purchaser is one of fact, and the master's report and the decree find that the bank was a purchaser.

It might be noted that no proof was made before the master that either of the appealing defendants owned any bonds or coupons, so we cannot see how they could be injured by the decree. Under a similar state of facts in *Anderson v. Pennsylvania Hotel Co.*, 56 F. (2d) 980, it was held that the party claiming a subordination of bonds held by a bank receiver had not shown that he owned any of the bonds, and it was neither pleaded nor proved that he was benefited or injured by the decree.

It also appears that no issue of subordination was raised in the pleadings. Defendant Weinstein in his answer claimed to have some interest in the premises covered by the trust deed, but no claim of subordination or payment of the bonds by the bank was made. A party will not be permitted to argue on appeal a defense or present an issue not interposed by his answer. *Bittner v. Field*, 354 Ill. 215, 220; *Hill v. Siffermann*, 230 Ill. 19, 25; *Chicago R. I. & P. Ry. Co. v. People*, 222 Ill. 427, 434.

The points just considered present no convincing reason which requires the reversal of the decree. But even a more conclusive reason for sustaining it appears when we consider the terms of the trust deed itself. Sec. 7, art. 2 of the trust deed provides:

"In consideration of the purchase for investment or resale by Madison & Kedzie State Bank of bonds or coupons issued hereunder, it is hereby expressly declared and agreed that all of said bonds and coupons thereto attached shall be received and held by each and every legal holder or owner thereof at all times hereafter, subject to the following rights and privilege of the Madison & Kedzie State Bank, its successors and assigns, that is to say: in case at any time the Madison

& Kedzie State Bank or any corporation which may succeed to its business, shall pay, out of its individual funds, to the holder or holders of any bonds or coupons, the amount or amounts due thereon, such bonds or coupons, whether the same be then matured or unmatured, shall thereupon be deemed to have been purchased by said Madison & Kedzie State Bank, or its successor in business, as the case may be, and shall be delivered uncanceled to it, and shall become and be the property of said Madison & Kedzie State Bank or its successor in business respectively, and it shall be unnecessary to give notice of any such purchase to the Mortgagor or to the holders of other bonds or coupons secured hereby, or to any one else, and no payment for such bonds or coupons under the provisions hereof, shall be considered a voluntary payment by said Madison & Kedzie State Bank, or its successor in business, for the benefit of the mortgagor or for the benefit of any other holder of bonds or coupons outstanding hereunder, nor shall any such payment have the effect to pay or retire the bonds or coupons for which payment is so made, or in any manner impair the security given by this Indenture in respect to the same, but such bonds and coupons shall be entitled to the security and benefit of this Indenture equally with all other outstanding bonds and coupons.'' This provision clearly gave the Madison & Kedzie State Bank the option to purchase such bonds or coupons, whether matured or unmatured. Defendants assert that such provision is void as contrary to public policy. The public policy of the State or of the nation is to be found in its constitution, statutes and judicial decisions. *Zeigler v. Illinois Tr. & Sav. Bank*, 245 Ill. 180, 193.

In *Anderson v. Pennsylvania Hotel Co., supra,* the court had under consideration an agreement in the mortgage that the trustee might purchase and hold

any of the bonds or coupons secured by the mortgage; when certain bonds became due they were not paid by the mortgagor but by the trustee bank; a foreclosure decree was entered subordinating such bonds; that bank receiver appealed, assigning this subordination as the sole error; on appeal the decree was modified so as to place these bonds upon a parity with the other bonds. The court held that the permission in the mortgage to the trustee to buy bonds binds all the bondholders claiming under the mortgage. *Chicago Title & Trust Co. v. Franklin* (Abst.), 187 Ill. App. 388, involved an agreement between the debtor and the issuing company that as bonds matured they would be taken up by this company and held uncanceled; in foreclosure proceedings it was contended that the bonds held by this company were not a lien upon the premises. The court held against this position, saying that they were acquired by purchase and were on a parity with other bonds. In *Rea v. Pennsylvania Canal Co.,* 245 Pa. 589, 597, there was an agreement indorsed on each of the bonds that the Pennsylvania Railroad Company, which controlled the canal company, would purchase the coupons if the mortgagor, the canal company, defaulted. It was held that the railroad company purchased the bonds with the right to hold them under the security of the mortgage, with the same right to priority of payment the coupons would have had in the hands of the bondholders. The court also held that this contract to purchase was a contract with the bondholders and that the parties had the right to make their own contract. See also *Chicago Title & Trust Co. v. Bidderman,* 275 Ill. App. 457, 467, where it was said that there was no rule of law that precludes the making of a contract whereby one of the makers of the bonds agrees in good faith to purchase some of them. A similar provision was

also sustained in *Chicago Title & Trust Co. v. Suter,* 287 Ill. App. 162, 169, and *Walker v. Dement,* 42 Ill. 272, 276. In the latter case the court held that such a contract contravened "no principle of law or public policy." Citing many cases.

As we have said, in the *Lake View Bank* case, *supra,* cited by defendants, there was no provision in the trust deed granting the bank permission to purchase bonds or coupons. But the opinion in that case cites *Bennett v. Chandler,* 199 Ill. 97, 106, where it was held that if there had been any agreement by the terms of which the collecting agent were to hold the coupons uncanceled and to be kept alive, another question would arise, and the opinion clearly indicates that if the proof showed there was such an agreement it would be enforced.

Other cases might be cited to the effect that when the bonds and trust deed given to secure them refer to each other they must be construed together. *Metropolitan Life Ins. Co. v. Kobbeman,* 260 Ill. App. 508, 512; *Baker v. James,* 280 Mass. 43. And bondholders are chargeable with notice of and bound by the provisions of the trust deed. *Anderson v. Pennsylvania Hotel Co., supra; McClelland v. Norfolk Southern R. Co.,* 110 N. Y. 469. And the trust deed must be looked to to determine the rights and powers of the trustee. *Martin v. Rockford Trust Co.,* 281 Ill. App. 441, 445; *Benton v. Safe Deposit Bank of Pottsville, Pa.,* 255 N. Y. 260; *Thompson v. Hays,* 11 F. (2d) 244, 248.

Defendants' final point is that the agreement to repurchase bonds and coupons is ultra vires and void, citing *Knass v. Madison & Kedzie State Bank,* 354 Ill. 554. In that case the court passed upon the validity of an agreement whereby the bank bound itself to repurchase the securities sold. This is not applicable to the instant provision. There is no agreement or obligation in the provision under consideration obli-

gating the bank to repurchase any of the bonds or coupons secured by the trust deed.

We see no convincing reason to disagree with the holding of the decree, and it is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.