THE DADMUN MANUFACTURING COMPANY *vs.* THE WORCESTER
MUTUAL FIRE INSURANCE COMPANY.
ALEXANDER DE WITT & others *vs.* THE SAME.

A manufacturing corporation caused insurance against loss by fire to be effected by an insurance company, subject to a rule or by-law of the company, which provided that the alienation, in any way, of any property insured by them, should *ipso facto* make void the policy, unless notice of the alienation should be given to their secretary, and an assignment made of the policy to the new owner of the property, within sixty days after the alienation: The corporation afterwards conveyed the insured property to A. in trust for the benefit of their creditors, part of whom were preferred; but did not assign the policy to A.: The insured property was afterwards sold, by order of a court of equity, for whom it might concern, and A. gave a quitclaim deed thereof to B., but the deed was not executed by the corporation, nor was the policy then assigned to B.: The insured property was afterwards destroyed by fire, and the corporation assigned the policy to B., who gave notice thereof to the secretary of the insurance company, within sixty days from the execution of A.'s said deed to him: Two actions were brought on the policy; one in the name of the corporation, and another in the name of B. *Held*, that the conveyance to A., by the corporation, was an alienation of the insured property, within the meaning of the policy, and that the corporation could not avoid that conveyance, and fall back upon their original title, by averring that the conveyance was void against their creditors, by force of the insolvent laws of 1836

and 1838; that A's deed to B. conveyed the whole estate in the insured premises, and that the corporation thenceforth had nothing at risk in said premises, at the time of the loss. *Held also,* that the provision in the rule or by-law of the insurance company, as to assignment of policies, related only to assignments before a loss, and that an assignment after a loss would not enable the assignee to maintain an action on a policy, in his own name. *Held further,* that neither of the actions could be maintained.

THESE were actions of assumpsit on a policy of insurance, dated December 11th 1840, by which the defendants caused the Dadmun Manufacturing Company to be insured against loss or damage by fire, for seven years, (under the conditions and limitations expressed in the defendants' rules or by-laws annexed to the policy,) " the sum of $2150 on their boarding house, on their furniture in said house, and on their barn," situate in Templeton. The cases were submitted to the court on an agreed statement of the following facts :

The defendants effected insurance, as stated in the plaintiffs' declarations. On the 17th of August 1843, the Dadmun Manufacturing Company, a corporation established by *St.* 1836, *c.* 26, by a deed of that date, granted, conveyed and assigned the property insured by the policy declared on in these actions, together with other property, to Charles E. Dadmun, Charles Church and Thomas Lord, in trust for the benefit of the assignors' creditors, with a provision that said property should be sold by the grantees, and the proceeds thereof applied, *first,* to the payment of certain creditors in full ; *secondly,* to pay the residue of the proceeds equally to certain creditors who should become parties to said deed of grant and assignment within 300 days ; and *thirdly,* to pay over the surplus, if any, to the assignors. The creditors, who became parties to said deed of trust, released the Dadmun Manufacturing Company from all claims and demands, with a proviso, that if the property assigned should fail to pay and discharge in full all the claims of said creditors, then each of said creditors should have a legal and equitable claim against the said company for any and all sums justly due to said creditors, in the same manner as if said release had not been inserted in the deed.

The said company did not make any assignment of said policy of insurance, at the time of executing the aforesaid deed. Afterwards, Josiah Howe of New York, a creditor of the said company, filed a bill in equity, in the circuit court of the United States for the first circuit, to set aside the aforesaid deed of trust. During the pendency of that bill, A.exander De Witt, Francis Skinner and Dexter A. Jones, the plaintiffs in the second of these actions, (for whose use the first of these actions is brought,) became purchasers of most of the claims against the said company. Such proceedings were subsequently had, that a decree was passed, in said suit in equity, that the property conveyed by the aforesaid deed of trust should be sold by a master, for the benefit of whom it might concern ; and under this decree a sale was made of said insured property, at auction, in August 1844, and said De Witt, Skinner and Jones became the purchasers thereof, but did not receive a conveyance thereof till the 23d of March 1845, when a quitclaim deed was made to them by said Dadmun, Church and Lord, but was not executed by the said company. Said policy of insurance was not assigned to said De Witt, Skinner and Jones, when the last mentioned deed was executed.

The insured buildings and furniture were destroyed by fire on the 24th of April 1845, and said De Witt, Skinner and Jones gave notice of the loss, within sixty days thereafter, to the defendants' directors ; and this action was brought within thirty days after the directors made their determination not to pay the loss.

Subsequently to the loss by fire, but within sixty days from the execution of said deed of March 23d 1845, the Dadmun Manufacturing Company made an assignment of said policy of insurance to said De Witt, Skinner and Jones, who thereupon, within sixty days from the execution of said deed, gave notice, to the defendants' secretary, of said alienation of the insured property, and of the assignment of said policy. Said assignment was not recorded in the defendants' books, but was offered, by said De Witt, Skinner and Jones, for record.

It is not contended by the defendants that there has been any omission to comply with their rules, which are annexed to the policy, other than the tenth rule, which is in these words : " *Art.* 10. The alienation, in any way, of any property insured by this company, shall *ipso facto* make void the policy, unless notice of the alienation is given to the secretary, and an assignment made of the policy to the new owner of the property, within sixty days after the alienation ; said assignment to be recorded on the back of the policy, in the company's book ; but the directors may receive a reasonable excuse for delaying the recording of the assignment longer than sixty days. But on the death of any person holding a policy in this company, said policy shall continue to attach to the buildings insured by it in the same way and under the same regulations as if the original owner was alive, and the benefits of it shall belong to the legal owner of the building so insured, he being subject to all the liabilities of the original owner."

The property conveyed in trust to Dadmun, Church and Lord, on the 17th of August 1843, was more than sufficient to pay in full all the claims of the creditors preferred in the deed of trust, and also all the claims of the other creditors who became parties thereto.

Judgment to be rendered for either of the plaintiffs, or for the defendants, according to the direction of the court.

*Bowman*, for the plaintiffs. The assignment by the plaintiffs to Dadmun, Church and Lord, in 1843, was void by *St.* 1836, *c.* 238, §§ 3, 11, and *St.* 1838, *c.* 163, §§ 12, 13, which prohibit preferences in assignments for the benefit of creditors. It is said by the court, in *Perry* v. *Holden,* 22 Pick. 275, and *Henshaw* v. *Sumner,* 23 Pick. 452, that one great object and purpose of *St.* 1836 was, to discourage preferences amongst creditors, and to insure an equal distribution of the debtor's property. See also *Staines* v. *Wainwright,* 6 Bing. N. R. 174, and 8 Scott, 280. *Wheeler* v. *Russell,* 17 Mass. 258. That assignment, being void, was not an alienation of the insured property, within the defendants' tenth rule or by-law.

But if this assignment was not void, yet it was not an alienation, within that by-law, because the conveyance was in trust, with a resulting trust to the plaintiffs. The creditors, who executed the assignment, did not release their claims, and there was a surplus left in the assignees' hands, after all the creditors who became parties to the assignment were paid in full. The plaintiffs had an insurable interest, after they had made the assignment. *Lazarus* v. *Commonwealth Ins. Co.* 5 Pick. 81, and 19 Pick. 94. *Strong* v. *Manufacturers Ins. Co.* 10 Pick. 43. *Higginson* v. *Dall*, 13 Mass. 101. *Stetson* v. *Mass. Mutual Fire Ins. Co.* 4 Mass. 330.

The quitclaim deed to De Witt, Skinner and Jones was not an alienation by the plaintiffs. They did not execute it; and its effect was to remit the property to its former owners. But if it was an alienation, yet the policy remained in force sixty days; and a policy may be assigned after a loss. *Brichta* v. *N. York Lafayette Ins. Co.* 2 Hall, 372. See *Jackson* v. *Mass. Mutual Fire Ins. Co.* 23 Pick. 423. *Wakefield* v. *Martin*, 3 Mass. 558. *Curry* v. *Commonwealth Ins. Co.* 10 Pick. 540.

*C. Allen*, for the defendants. The policy was avoided, as to the Dadmun Manufacturing Company, by the assignment of August 17th 1843. 1st. Because the company parted with all their insurable interest in the insured premises. In no event was the property to go back to the company; but only the surplus of the proceeds thereof. That assignment was not void by *Sts.* 1836 and 1838, but only voidable by creditors; and the company cannot allege its invalidity. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515. 2d. Because the assignment was contrary to the contract of insurance, which was made subject to the defendants' tenth by-law, which provides that "the alienation, *in any way*, shall *ipso facto* make void the policy."

The policy is void as to Alexander De Witt and others, by the alienation subsequently to the assignment of August 1843, namely, by the sale at auction by the master, in August 1844. The deed to De Witt and others was made in March

1845, and they had no interest in the insured property at the time of the loss. *Wilson* v. *Hill*, 3 Met. 66. *Gordon* v. *Mass. Fire & Marine Ins. Co.* 2 Pick. 249. *Locke* v. *North American Ins. Co.* 13 Mass. 61. *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 397.

*Hartshorn*, in reply. Perhaps the second of these actions cannot be maintained. But the first may be, because the word "alienation," in the defendants' by-law, means an entire disposal of the property, so that nothing remains in the assignor, which is the subject of insurance. Much was left in the assignors, in this case, even allowing the assignment to be valid. But it was void; for a corporation is as much a "debtor," within *St.* 1836, *c.* 238, as an individual, and may, by its proper officer or agent, make the oath required by that statute. Cooper Eq. Pl. 17. *Flint* v. *Clinton Co.* 12 N. Hamp. 430.

HUBBARD, J. It is a fundamental principle of the law of insurance, that the assured must have something at risk at the time of the loss, to entitle him to recover. Otherwise, wager policies would constantly be made, and gambling would be carried on, under the name of insurance.

The facts in this case are, that the assured, being embarrassed, assigned their property, including the premises insured, to Dadmun, Church and Lord, as trustees, to sell the same and pay the debts secured by the assignment; and the deed of assignment contained only a qualified release of the assignors. This deed, it is now said by the plaintiffs, was fraudulent and void against creditors, by force of the statutes of 1836 and 1838. However that may be, it does not lie with the assignors to aver their fraud in making that deed, in order to avoid the title made by them under it, and thus be allowed to fall back upon their former title. *Carroll* v. *Boston Marine Ins. Co.* 8 Mass. 515.

The insured property was sold at auction, in August 1844, under an interlocutory decree of the circuit court of the United States, for a valuable consideration, to De Witt, Skinner and Jones, who had bought up the greater part of the

debts against the assignors, after the bill in equity was filed against the assignors and assignees, by a creditor who was not a party to the assignment; and the assignees afterwards executed a deed to said De Witt and others, pursuant to such decree. And we are of opinion that this deed conveyed the whole estate to the purchasers, with the knowledge and consent of the assignors, who are plaintiffs in the first of these actions; and that, by reason thereof, there remained in them no longer any legal or equitable estate, and that they had nothing at risk in the insured premises.

But no notice of that conveyance was given to the defendants, nor did any assignment of the policy take place within sixty days thereafter. This was a violation of the tenth rule or by-law of the defendants, of which they may avail themselves. It is said that this conveyance was in trust to pay debts which the property was more than sufficient to cover. But this fact does not alter the character of the conveyance, nor make it less an alienation. A payment of those debts by the assignors themselves would not have revested the estate in them. To produce this effect, a conveyance from their grantees would have been necessary. But no such payment took place. Other creditors came in, and a public sale was made, which took away any equitable interest which the assignors had in the estate.

The assignment of the policy, after the loss, and within sixty days from the conveyance, does not bear upon the case. The provisions of the defendants' tenth rule or by-law relate to assignments before a loss, and when the insurers have a right to know, and an interest in knowing, for what persons they stand as insurers; and for their protection in this respect, that rule was made. But after a loss, the rights and duties of the parties are changed. The policy is then a mere chose in action, and may be assigned, like any other chose in action, and a suit may be maintained thereon, for the benefit of the assignee, in the name of the insured. But the plaintiffs in the first of these actions had parted with the insured property,

before the loss, without giving the required notice; and at the time of the loss they had nothing at risk.

*Judgments in both actions for the defendants.*